# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ROSA E. RIVERA MARRERO, | Case No. 3:22-cv-01217 |
| on behalf of herself and all others similarly situated, | Honorable Aida M. Delgado-Colón |
| Plaintiff, | |
| v. | |
| BANCO POPULAR DE PUERTO RICO, a Puerto Rico–based for profit bank, | |
| Defendant. | |

## DEFENDANT BANCO POPULAR DE PUERTO RICO'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)

**TO THE HONORABLE COURT:**

Defendant Banco Popular de Puerto Rico ("Popular"), through its undersigned counsel, respectfully moves this Court to dismiss Plaintiff Rosa E. Rivera Marrero's ("Plaintiff") Class Action Complaint, Dkt. No. 1 ("Complaint" or "Compl.") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

This case is one of dozens of putative class action lawsuits filed in the aftermath of a 2021 data breach of software owned by Accellion, Inc. (the "Accellion Breach")—software that had been licensed by Accellion's clients for the very purpose of ensuring the secure file transfer of sensitive data. The other lawsuits that have been filed—including two by Plaintiff's counsel—have named Accellion and/or certain of its clients as defendants and allege that Accellion (and its clients) failed to implement reasonable security measures to protect personally identifiable information ("PII").

While Plaintiff's Complaint largely copies allegations from the other complaints filed by her counsel—including allegations regarding her purported "injuries"—this case differs from the other Accellion-related cases in one notable respect. The Complaint does not allege that Popular contracted with Accellion or otherwise used Accellion's software. Rather, the Complaint alleges that one of Popular's *vendors* used Accellion's secure file transfer software for its customers, including Popular. While Plaintiff has included the same conclusory allegations from the other complaints that Popular failed to implement reasonable security measures, she has not pointed to any actual conduct by Popular that is traceable to, or otherwise caused, the Accellion Breach. In effect, Plaintiff is seeking to hold Popular strictly liable for the Accellion Breach when its only involvement was sharing customer information with one of its vendors, as it is allowed to do under federal law. Plaintiff's claims should not be allowed to proceed.

1

*First*, Plaintiff lacks standing under Article III of the Constitution, as she fails to allege any concrete injury that is fairly traceable to Popular. Plaintiff does not allege any actual misuse of her PII as a result of the Accellion Breach, and instead bases her claim on the risk of future injury. But claims premised on the potential risk of future injury are foreclosed by binding precedent. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210-11 (2021).

*Second*, Plaintiff fails to state a claim upon which relief may be granted. Each of Plaintiff's claims for negligence, breach of implied contract, invasion of privacy, breach of confidence, and unjust enrichment fails as a matter of law for the following reasons:

**Negligence:** (1) Plaintiff has not adequately alleged any physical or emotional injury; (2) Plaintiff has not adequately alleged that Popular committed a negligent act or omission; (3) Plaintiff cannot base her theory of negligence per se on alleged violations of the Federal Trade Commission Act, 15 U.S.C. §§ 41-58 (the "FTC Act") and the Gramm-Leach-Bliley Act, 15 U.S.C. 6801 (the "GLBA"); and (4) Plaintiff has not alleged a causal nexus between Popular's alleged conduct and any purported injury.

**Breach of Implied Contract:** (1) Puerto Rico does not recognize implied-in-fact contracts as valid and binding; (2) Plaintiff has not alleged a meeting of the minds sufficient to form a valid contract; (3) Plaintiff alleges no credible breach; and (4) Plaintiff fails to allege any resulting damages.

**Invasion of Privacy:** (1) Plaintiff alleges no intrusive act by Popular; (2) there has been no excessive publication of Plaintiff's PII; and (3) Plaintiff has not alleged the requisite intent.

**Breach of Confidence:** (1) Breach of confidence is not recognized as a separate tort under Puerto Rico law; and (2) Plaintiff has not alleged the requisite intentional disclosure.

**Unjust Enrichment:** (1) Unjust enrichment is not available when the plaintiff may

pursue other remedies; (2) Plaintiff has not alleged any benefit conferred on Popular; (3) Plaintiff

has not alleged a loss or a connection between the loss and benefit; and (4) Plaintiff has not

alleged that Popular's retention of the purported benefit would be unjust.

## BACKGROUND

Popular is a Puerto Rico–based bank headquartered in San Juan. Compl. ¶ 13. In the

spring of 2021, Popular learned from one of its vendors that it was the victim of a cybersecurity

breach involving the compromise of software owned by Accellion, which the vendor had used

for secure file transfer for its customers, including Popular.[1] *Id.* ¶ 22. The Accellion Breach

occurred in December 2020 and January 2021 and involved a threat actor exploiting zero-day

(previously unknown) vulnerabilities in the software. Ex. 1.[2] Upon learning of the Accellion

Breach, Popular's vendor discontinued use of the impacted Accellion software and promptly

launched an investigation to determine the full scope of the incident. Compl. ¶ 22. Popular

subsequently learned that some of its files were compromised in the Accellion Breach, including

files that contained PII of some of its customers. *Id.*

On or about June 25, 2021, Popular began sending formal notices to affected individuals.

*Id.* Out of an abundance of caution, Popular engaged Experian to provide its Identity Works

---

[1] The Accellion Breach spawned dozens of putative class action lawsuits in 2021 against
Accellion and its customers, including two filed by Plaintiff's counsel. *See Angus v. Flagstar
Bank, FSB*, No. 2:21-cv-10657-AJT-DRG (E.D. Mich. filed Mar. 25, 2021); *Zebelman v.
Accellion, Inc.*, No. 5:21-cv-01203-EJD (N.D. Cal. filed Feb. 18, 2021). Accellion has reached a
class-wide settlement, of which Plaintiff—and the putative class alleged here—are proposed
settlement class members. *See Class Action Settlement Agreement & Release § 1.46, In re
Accellion, Inc. Data Breach Litig.*, No. 5:21-cv-01155-EJD (N.D. Cal. June 13, 2022), ECF No.
99-5 (defining "Settlement Class" as "residents of the United States whose Personal Information
was stored on the FTA systems of FTA Customers and was compromised in the Attacks").

[2] The Court may consider the Accellion press release—which is quoted and cited in the
Complaint, Compl. ¶ 25 & n.6—on a motion to dismiss because Plaintiff "explicitly relied upon
[it] in the [C]omplaint." *Reyes de Leon v. Coconut Props., LLC*, 546 F. Supp. 3d 116, 123
(D.P.R. 2021) (taking judicial notice of extrinsic documents on motion to dismiss).

credit monitoring product to affected individuals at no cost for two years. *Id.*, Ex. 1. Identity

Works helps detect possible misuse of affected individuals' information and provides identity

protection support focused on immediate identification and resolution of identity theft. *Id.*

On May 12, 2021, nearly a year after Popular notified affected individuals of the

Accellion Breach, Plaintiff Rosa E. Rivera Marrero filed this putative class action complaint. The

allegations in the Complaint largely mirror the complaints filed by Plaintiff's counsel in other

actions involving the Accellion Breach. *Compare, e.g.*, Compl. ¶¶ 1, 6-11, 19-21, *with* Compl. ¶¶

1, 6-11, 20-22, *Angus v. Flagstar Bank, FSB*, No. 2:21-cv-10657 (E.D. Mich. Mar. 25, 2021),

ECF No. 1.

Plaintiff is a current banking customer of Popular who alleges that her PII was

compromised in the Accellion Breach. Compl. ¶¶ 71-72. Plaintiff does not allege that her identity

has been stolen, that she has been the victim of fraud, or that her PII has been misused in any

way. Rather, Plaintiff alleges that she has "spent time dealing with the consequences of the Data

Breach," including "verifying the legitimacy of the news reports of the Data Breach, exploring

credit monitoring and identity theft insurance options and self-monitoring her financial

accounts." *Id.* ¶ 73. Plaintiff further alleges that she has "suffered actual injury in the form of

damages to and diminution in the value of her PII" and that she has suffered "lost time,

annoyance, interference, and inconvenience" as a result of the Accellion Breach and has "anxiety

and increased concerns for the loss of her privacy." *Id.* ¶¶ 76-77. Finally, Plaintiff alleges that

she has "suffered imminent and impending injury arising from the substantially increased risk of

fraud, identity theft, and misuse" resulting from her PII being in the hands of unauthorized third

parties. *Id.* ¶ 78. Plaintiff's alleged "injuries" appear to have been copied from other complaints

filed by her counsel.[3]

## LEGAL STANDARD

Popular moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of standing. To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 141 S. Ct. at 2203. "[A]t the pleading stage, the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action. Neither conclusory assertions nor unfounded speculation can supply the necessary heft." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).

Popular also moves to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Court must "accept[] as true all well-pleaded facts and draw[] all reasonable inferences in the plaintiff's favor," that "tenet . . . is inapplicable to legal conclusions." *Mega Media Holdings, Inc. v. Aerco Broad. Corp.*, 852 F. Supp. 2d 189, 198 (D.P.R. 2012) (J. Delgado-Colón) (quoting *Iqbal*, 556 U.S. 662). "Threadbare recitals of the

---

[3] *See, e.g.*, Compl. ¶ 64, *Zebelman* (plaintiff "spent time dealing with the consequences of the Data Breach," including "verifying the legitimacy of the news reports of the Data Breach, exploring credit monitoring and identity theft insurance options, and self-monitoring her accounts"); *id.* ¶ 67 (plaintiff "suffered actual injury in the form of damages to and diminution in the value of her PII"); *id.* ¶ 68 (plaintiff "suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach, and has anxiety and increased concerns for the loss of her privacy"); *id.* ¶ 69 (plaintiff "suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII").

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

**I.    Plaintiff Does Not Allege a Concrete Injury in Fact Traceable to Popular's Conduct, and Therefore Lacks Standing under Article III**

Plaintiff's allegations fail to establish Article III standing. *First*, Plaintiff's alleged "injuries" are speculative, self-inflicted, or not cognizable, and therefore cannot constitute injuries in fact. *Second*, even if Plaintiff alleged injuries from actual misuse of her PII—which she does not—those injuries would not be fairly traceable to Popular's actions.

### A.    Plaintiff Has Not Alleged a Concrete Injury in Fact

To establish an injury in fact, a plaintiff must show that her injury is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To be concrete, an injury must be "real, and not abstract." *Id.* at 340 (citations and internal quotations omitted). To be particularized, an injury "must affect the plaintiff in a personal and individual way." *Id.* at 339. "Allegations of *possible* future injury do not satisfy the requirements of Art. III. A threatened injury must be *certainly impending* to constitute injury in fact." *Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 364 (M.D. Pa. 2015) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis added).

Plaintiff's alleged injuries are neither concrete nor particularized, and her Complaint should therefore be dismissed. *First*, the potential risk of identity theft without any evidence of actual misuse does not create standing in an action for damages. *Second*, Plaintiff also lacks standing to pursue injunctive relief because she cannot show that her risk of future harm is "certainly impending." *Third*, Plaintiff cannot evade Article III's standing requirements by

incurring mitigation costs to self-inflict an injury in fact. *Fourth*, neither Plaintiff's alleged diminution in the value of her PII nor her anxiety qualify as concrete injuries in fact sufficient to establish standing under Article III.

      1.    **An increased risk of future identity theft, without actual harm, does not establish standing in an action for damages.**

The Supreme Court held last year in *TransUnion* that "[i]n a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm." 141 S. Ct. at 2210-11. There, plaintiffs alleged that TransUnion violated the Fair Credit Reporting Act by adding inaccurate alerts to their credit files. *Id.* at 2200. Though TransUnion did not share those mistaken reports with third parties during the alleged time frame for most purported class members, plaintiffs still argued they had standing to pursue their claims because the "misleading [] alerts in their internal credit files exposed them to a material risk that the information would be disseminated in the future." *Id.* at 2200, 2210. The Supreme Court disagreed. Only once "the risk of future harm materialize[d] and the individual suffer[ed] a concrete harm" could plaintiffs have standing to pursue a claim for damages. *Id.* at 2211.

Similarly, in data breach cases, the First Circuit and the District of Puerto Rico have held that an increased risk of future identity theft is insufficient to confer standing. *See Katz v. Pershing, LLC*, 672 F.3d 64, 79 (1st Cir. 2012) (no standing where increased risk that someone would access Plaintiff's data because it was available to third parties); *Quintero v. Metro Santurce, Inc.*, No. 20-01075, 2021 WL 5855752, at *8 (D.P.R. Dec. 9, 2021) (no standing for alleged risk of future identity theft where there was no alleged misuse of PII). In *Quintero*, defendant hospital suffered a ransomware attack that allegedly exposed patients' PII. *Id.* at *2. Plaintiffs sued, alleging a heightened risk of future identity theft. *Id*. This Court dismissed their

case, however, because "[a]bsent plausible allegations that the information itself was accessed *and* misused the named Patients lack constitutional standing." *Id.* at *8 (emphasis added).

Here, Plaintiff alleges she faces an increased risk of fraud, identity theft, and misuse of her PII, but this risk cannot create standing on its own. There has been no alleged misuse of her data—or any putative class member's data—in the more than eighteen months since the Accellion Breach occurred. At most, Plaintiff speculates that her PII "can [be] easily access[ed]" and therefore "may end up for sale." Compl. ¶ 29. But like the plaintiffs in *TransUnion*, because the risk of future harm has not materialized in any way, she lacks standing to pursue her claims. *See Quintero*, 2021 WL 5855752 at *8; *see also Legg v. Leaders Life Ins. Co.*, --- F. Supp. 3d ---, 2021 WL 5772496, at *6 (W.D. Okla. Dec. 6, 2021) (*TransUnion* bars standing to claim damages in data breach case based on risk of future harm alone); *C.C. v. Med-Data, Inc.*, No. 21-2301-DDC-GEB, 2022 WL 970862, at *7-8 (D. Kan. Mar. 31, 2022) (same).

2.      **Plaintiff also lacks standing to pursue injunctive relief where the alleged future harm is not "certainly impending."**

A potential future injury only creates standing to seek injunctive relief if "the risk of harm is sufficiently imminent and substantial." *TransUnion*, 141 S. Ct. at 2210; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (the "threatened injury must be *certainly impending*" and "[a]llegations of *possible* future injury are not sufficient"). A plaintiff cannot demonstrate this risk from mere speculation. *TransUnion*, 141 S. Ct. at 2211-12. Here, however, Plaintiff seeks to do exactly that.

*First*, the possibility that someone's data "can be used to commit" fraud is insufficient to establish standing, especially where there are no allegations that the data has been, or certainly will be, misused. Compl. ¶ 19; *see TransUnion*, 141 S. Ct. at 2211-12; *Katz*, 672 F.3d at 80; *Quintero*, 2021 WL 5855752, at *8; *Hartigan v. Macy's, Inc.*, 501 F. Supp. 3d 1, 5 (D. Mass.

2020) (no substantial risk of future harm without any "allegations of any fraudulent use or even attempted use of the personal information to commit identity theft"). Courts throughout the country have agreed with this reasoning to bar standing where plaintiffs do not allege any actual misuse of their PII. *See McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 304 (2d Cir. 2021) (affirming dismissal of complaint, in part because plaintiffs did not "allege any facts suggesting that their PII (or that of any others) was misused"); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) ("Appellants have not suffered any injury; there has been no misuse of the information, and thus, no harm."); *Beck v. McDonald*, 848 F.3d 262, 274 (4th Cir. 2017) (declining to find standing because the lack of any claims of actual misuse "renders [plaintiffs'] contention of an enhanced risk of future identity theft too speculative"); *In re SuperValu, Inc.*, 870 F.3d 763, 770-71 (8th Cir. 2017) (dismissing all but one plaintiff for lack of standing because they failed to allege any actual misuse of their data); *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1344 (11th Cir. 2021) ("Evidence of a mere data breach does not, standing alone, satisfy the requirements of Article III standing.").

   *Second*, the Accellion Breach occurred over eighteen months ago, and Plaintiff has not alleged any occurrence of identity theft, fraud or misuse of her data, showing that the risk of future harm is not "certainly impending." *See Quintero*, 2021 WL 5855752, at *5. In the data breach context, the more time that has passed since a breach without incident, the less likely it is that a plaintiff has suffered an injury in fact. *See Beck*, 848 F.3d at 275 ("[A]s the breaches fade further into the past, the Plaintiffs' threatened injuries become more and more speculative."); *Storm*, 90 F. Supp. 3d at 366-67 (no injury in fact where almost a year had passed since alleged breach without any alleged actual misuse); *Quintero*, 2021 WL 5855752 at *5 (considering Puerto Rico's one-year statute of limitations for negligence claims and lack of evidence of

misuse of Plaintiffs' data in two years since data breach before finding that plaintiffs lacked standing). Furthermore, while she claims that her risk of harm is "certainly impending," Plaintiff contradicts herself by asserting that her risk of future harm resulting from the Accellion Breach could persist "for years." Compl. ¶ 40. *See Katz*, 672 F.3d at 71 ("[I]t is not enough that the harm might occur at some future time."); *Darnell v. Wyndham Cap. Mortg., Inc.*, No. 3:20-CV-00690-FDW-DSC, 2021 WL 1124792, at *7 (W.D.N.C. Mar. 24, 2021) ("If what Plaintiff alleges is true, and fraudulent activity may not occur for *years*, it is impossible for [her] to be at imminent risk of harm.").

*Third*, Plaintiff has not alleged any basis for injunctive relief. Popular's vendor has stopped using the impacted Accellion software, Compl. ¶ 24, and future changes to Popular's data security will have no impact on the alleged harm Plaintiff could potentially suffer as a result of the prior Accellion Breach. *See Greenstein v. Noblr Reciprocal Exch.*, --- F. Supp. 3d ---, 2022 WL 472183, at *8 (N.D. Cal. Feb. 15, 2022) (no standing for injunctive relief where injunctive relief "could not compel the hackers or [defendant] to return the PI to Plaintiffs" and where defendant "already took immediate action . . . by changing its policies"); *Beck*, 848 F.3d at 277 ("[A]bsent a sufficient likelihood that Plaintiffs will again be wronged in a similar way, these past events . . . are not sufficient to confer standing to seek injunctive relief.").

3.   **Plaintiff's other alleged injuries are also insufficient to confer Article III standing.**

(a)   **Lost time**

Without a plausible risk of future identity theft, Plaintiff also seeks to establish an injury in fact and gain standing by alleging "lost time" and "opportunity costs." Compl. ¶ 10. Plaintiff, however, "cannot manufacture standing merely by inflicting harm on [herself] based on [her] fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. In

the data breach context specifically, where, as here, "plaintiffs have not alleged a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury." *In re SuperValu, Inc.*, 870 F.3d at 771.[4]

(b)      **Diminution in the value of PII**

PII has no cognizable monetary value for its owners, and Plaintiff offers no allegation to the contrary. *See* Compl. ¶ 41 (noting "high value" of PII to "criminals"). Courts have consistently rejected the argument that the diminution in the value of PII can support Article III standing. *See, e.g.*, *In re SAIC Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 30 (D.D.C. 2014) (no standing for alleged diminution in value of PII because "it is unclear whether or how the data has been devalued by the breach").[5] Even assuming that PII has an independent monetary value, Plaintiff does not allege that the diminution of this value has harmed her specifically. She does not allege that she intended to sell her PII but could not, or that she was forced to accept a discounted price. Without an allegation of present injury, Plaintiff has not alleged an injury in fact under this theory. *See Legg*, 2021 WL 5772496, at *7 ("Assuming personal identifying information has a monetary value, Plaintiff fails to allege that he attempted to sell his personal information and was forced to accept a decreased price.").

---

[4] *See also Tsao*, 986 F.3d at 1345 (11th Cir. 2021) (no standing based on mitigation costs because plaintiffs "cannot manufacture standing by incurring costs in anticipation of non-imminent harm"); *McMorris*, 995 F.3d at 304 n.7 (same); *Reilly*, 664 F.3d at 46 (same); *Khan v. Child.'s Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016) (same); *Hartigan*, 501 F. Supp. 3d at 6 (no standing where plaintiff's "purchase of credit monitoring services . . . 'was not premised on a reasonably impending threat'"); *Alonso v. Blue Sky Resorts, LLC*, 179 F. Supp. 3d 857, 864 (S.D. Ind. 2016) (same).

[5] *See also Kylie S. v. Pearson PLC*, 475 F. Supp. 3d 841, 849 (N.D. Ill. 2020); *Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078, 1088-89 (E.D. Cal. 2015); *In re Practicefirst Data Breach Litig.*, No. 1:21-CV-00790 (JLS/MJR), 2022 WL 354544, at *7 (W.D.N.Y. Feb. 2, 2022); *Duqum v. Scottrade, Inc.*, No. 4:15-CV-1537-SPM, 2016 WL 3683001, at *7 (E.D. Mo. July 12, 2016); *Chambliss v. Carefirst, Inc.*, 189 F. Supp. 3d 564, 572 (D. Md. 2016).

(c)     **Anxiety/annoyance**

"[A] bare allegation of anxiety is not a cognizable, concrete injury." *Garland v. Orlans,*

*PC*, 999 F.3d 432, 439 (6th Cir. 2021); *see also Orta Rivera v. Congress*, 338 F. Supp. 2d 272,

277 (D.P.R. 2004) ("Such an abstract psychological injury, without any demonstration of a

personal, cognizable injury to Plaintiff arising as a consequence of Defendants' actions, does not

constitute an injury-in-fact under Article III."); *Maddox v. Bank of N.Y. Mellon Tr. Co.*, 19 F.4th

58, 66 (2d Cir. 2021) ("A perfunctory allegation of emotional distress . . . is insufficient to

plausibly allege constitutional standing."). Courts throughout the country have reaffirmed this

tenet of standing in the data breach context. *See, e.g.*, *Reilly*, 664 F.3d at 44-46 (no standing

based on claims of emotional distress from data breach); *In re Vtech Data Breach Litig.*, No. 15

CV 10889, 2017 WL 2880102, at \*5 n.6 (N.D. Ill. July 5, 2017) ("Where only an unspecified

risk of future financial harm is alleged, emotional distress in the wake of a data security breach is

insufficient to establish standing."). Plaintiff's perfunctory allegations of "anxiety," "annoyance"

and "inconvenience" following the Accellion Breach, Compl. ¶ 77, should therefore be rejected

as an injury in fact. *See Beck*, 848 F.3d at 272 (rejecting claims that "emotional upset and fear of

identity theft and fraud resulting from data breaches . . . confer Article III standing."); *Krohm v.*

*Epic Games, Inc.*, 408 F. Supp. 3d 717, 720 (E.D.N.C. 2019) ("Anxiety and anguish resulting

from data breaches do not confer standing.").

### B.     Plaintiff Fails to Allege Any Injury Fairly Traceable to Popular's Conduct.

Even if Plaintiff plausibly alleged an injury in fact, which she does not, she still lacks

standing to bring her claims because any injury she suffered is not fairly traceable to Popular.

"[T]here must be a causal connection between the injury and the conduct complained of—the

injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e]

result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at

560; *see also Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*, 958 F.3d 38, 48 (1st Cir. 2020) ("The Supreme Court has cautioned against courts finding that a plaintiff's injury is fairly traceable to a defendant's conduct where the plaintiff alleges a causal chain dependent on actions of third parties.").

Here, Plaintiff has not alleged any "facts relating to what [Popular] did or did not do that led to the injuries claimed by" Plaintiff. *Springmeyer v. Marriott Int'l, Inc.*, No. 20-cv-867-PWG, 2021 WL 809894, at *3 (D. Md. Mar. 3, 2021) (conclusory allegations that defendant "fail[ed] to implement adequate and reasonable cyber-security procedures and protocols" were insufficient to demonstrate that alleged injuries were fairly traceable to defendant's conduct). Moreover, the causal connection alleged by Plaintiff depends on the conduct of several third parties—including the threat actor(s), Accellion, and Popular's vendor—who are not before the court, counseling against finding standing. *See Katz*, 672 F.3d at 77 (no standing to pursue consumer protection claims because alleged overcharged fees went to third party, so alleged injury was "not fairly traceable to the defendant's action").

*     *     *     *     *

Plaintiff's alleged harms resulting from the Accellion Breach—taken together or standing alone—do not constitute a concrete injury in fact traceable to Popular's conduct. Without Article III standing, this Court lacks subject matter jurisdiction over this dispute and, respectfully, should dismiss Plaintiff's Complaint with prejudice.

## II.    Plaintiff Fails to State a Claim Arising from the Accellion Breach.

In the alternative, even if Plaintiff has standing (which she does not), her Complaint should still be dismissed for failure to state a claim. Plaintiff asserts five causes of action for (1) negligence, (2) breach of implied contract, (3) invasion of privacy, (4) breach of confidence, and (5) unjust enrichment. Compl. ¶¶ 96-178. Each claim fails as a matter of law.

### A.    Plaintiff Fails to State a Claim for Negligence (Count I).

Tort claims, including negligence, are governed by Puerto Rico's Civil Code. *See* P.R.

Laws Ann. tit. 31, § 10801 ("A person who by fault or negligence causes damage to another is

obliged to repair it."). The three essential elements for general tort claims are (1) a physical or

emotional injury, (2) a negligent or intentional act or omission (a breach of duty), and (3) a

sufficient casual nexus between the injury and the defendant's act or omission (i.e., proximate

cause). *See id*; *Vazquez-Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007);

*Wojciechowicz v. United States*, 582 F.3d 57, 66-67 (1st Cir. 2009); *Torres v. KMart Corp.*, 233

F. Supp. 2d 273, 277-78 (D.P.R. 2002). Plaintiff has failed to allege these elements.

### 1.    Plaintiff has not alleged any physical or emotional injury.

As set forth in Section I, Plaintiff has not alleged an injury in fact, let alone a physical or

emotional injury as required to state a negligence claim under Puerto Rico law. *See Vazquez-*

*Filippetti*, 504 F.3d at 49 (noting that one of the essential elements of a negligence claim is

"evidence of physical or emotional injury"). Indeed, courts in data breach cases have routinely

dismissed negligence claims based on the same types of injuries Plaintiff alleges here:

**Diminution in value of PII.** As with standing, courts have concluded that "general

allegations that a plaintiff's personal information has diminished in value are not enough" to

survive a motion to dismiss for failure to state a claim; rather, a plaintiff must allege facts

showing how her PII actually lost value. *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 45

(D. Ariz. 2021) ("[A] plaintiff 'must establish both the existence of a market for her personal

information and an impairment of her ability to participate in that market.'" (citation omitted)).[6]

---

[6] *See also Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614-15 (9th Cir. 2021)
(citing studies establishing "that personal information may have value in general" is not the same
as alleging "that [plaintiff's] personal information actually lost value"); *Gardiner v. Walmart,*
*(cont'd)*

**Lost Time.** "The majority view is that 'general allegations of lost time' . . . are not [a] cognizable injur[y]" for purposes of a negligence claim. *Id.* at 45 (citation omitted); *see also Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 156 (1st Cir. 2011) (observing that "time and effort alone do not constitute a cognizable harm under Maine law"); Section I.A.3(a). And even where, unlike here, actual out-of-pocket mitigation costs are alleged, such mitigation costs are insufficient to sustain a tort claim unless the plaintiff provides factual allegations showing such steps were "reasonable." *Anderson*, 659 F.3d at 165 n.10 ("[W]here neither the plaintiff nor those similarly situated have experienced fraudulent charges resulting from a theft or loss of data, the purchase of credit monitoring services may be unreasonable and not recoverable"); *Griffey*, 562 F. Supp. 3d at 45-46; *Gardiner*, 2021 WL 4992539, at *4-5; *Holly v. Alta Newport Hosp., Inc.*, --- F. Supp. 3d ---, No. 2:19-cv-7496-ODW, 2020 WL 1853308, at *6 (C.D. Cal. Apr. 10, 2020).

**Anxiety and Increased Concerns for Loss of Privacy.** "[A] general allegation of emotional harm like anxiety or distress falls 'short of cognizable injury as a matter of general tort law,' because 'liability for emotional harm arises' '*only* where it is extreme.'"[7] *Garland*, 999 F.3d at 440 (quoting *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 864 (6th Cir. 2020)); *Holly*, 2020 WL 1853308, at *6 (dismissing negligence and breach of contract claims where plaintiff's "allegations concerning her physical, mental, and emotional pain 'are too sparse and conclusory to support' her claims for damages" (citation omitted)); *see also* Section I.A.3(c).

---

*Inc.*, No. 20-cv-4618-JSW, 2021 WL 4992539, at *3 (N.D. Cal. July 28, 2021) (dismissing claim where plaintiff failed to "allege that he has been unable to sell, profit from, or monetize his personal information" as a result of the defendant's negligence).

[7] While Puerto Rico courts have recognized anxiety and mental anguish as cognizable injuries for negligence claims, it has generally been in instances where the emotional distress was accompanied by physical injuries*, see, e.g.*, *In re Caribbean Petroleum, LP*, 611 F.Supp. 2d 99, 103-04 (D.P.R. 2009), or whether the emotional distress stemed from physical injuries of a loved one, *see, e.g.*, *Com. Union Ins. Co. v. Gonzalez Rivera*, 358 F.2d 480, 485 (1st Cir. 1966).

**Risk of Future Harm.** The mere risk of future harm, absent present physical or emotional injury, is not sufficient to state a claim for negligence. *See* Section I.A.2; *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 963 (S.D. Cal. 2012) ("[T]he mere 'danger of future harm, unaccompanied by present damage, will not support a negligence action.'"); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1055 (E.D. Mo. 2009) (dismissing negligence claim because "[d]amages cannot reasonably be assessed for a hypothetical harm which may (or may not) come to plaintiff in the future").

2.  **Plaintiff has not adequately alleged any negligent or intentional act or omission by Popular.**

Plaintiff has not adequately alleged that Popular breached any duty of care by failing to act as a prudent and reasonable person under the circumstances. *See Vazquez-Filippetti*, 504 F.3d at 49. *First*, Plaintiff's Complaint contains nothing more than conclusory allegations that Popular breached its duty of care by failing to implement adequate security measures.[8] *See, e.g.*, Compl. ¶ 30 ("Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining . . . ."). Many of Plaintiff's allegations make little sense given that Popular did not contract with Accellion or otherwise use its software, showing that these allegations are just a relic from other complaints filed by Plaintiff's counsel. *See, e.g.*, *id.* ¶ 26 ("Defendant should have migrated to Kiteworks or another superior solution before the Data Breach occurred."); *id.* ¶ 27 ("Defendant continued to use Accellion FTA to share and/or store the PII of Class Members, notwithstanding its 'legacy'

---

[8] Courts in other jurisdictions have dismissed complaints premised on similar allegations concluding that there is no common law duty to safeguard personal information. *See, e.g.*, *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 816 (7th Cir. 2018); *McConnell v. Ga. Dep't of Labor*, 814 S.E.2d 790, 798 (Ga. Ct. App. 2018), *aff'd*, 828 S.E.2d 352 (Ga. 2019).

*(cont'd)*

status and the availability of a 'superior' alternative . . . .").[9] Plaintiff's inability to plausibly allege any facts supporting her conclusory allegation that Popular failed to use reasonable security procedures is fatal to her claim. *Accord Hartigan*, 501 F. Supp. 3d at 7 (conclusory allegation that defendant "did not comply with its privacy policy cannot meet Twombly's plausibility standard"); *Anderson v. Kimpton Hotel & Rest. Grp., LLC*, No. 19-cv-1860-MMC, 2019 WL 3753308, at \*5 (N.D. Cal. Aug. 8, 2019) (dismissing breach of contract claim where complaint only alleged that defendant "failed to act in a 'reasonable' and 'appropriate' manner and failed to take 'obligatory,' 'sufficient,' and 'adequate' steps to protect plaintiffs' PII").

*Second*, Popular's disclosure of its customer's PII to its vendor did not breach any duty of care. Federal law allows banks to share customer information in a variety of instances, including to vendors to service and maintain the customer's account. *See* Section II.A.2. Popular acted within the law in disclosing its customer's PII to its vendor, and thus did not breach its duty to act as a reasonably prudent person under the circumstances.

### 3.  Plaintiff's negligence per se claim also fails.

Plaintiff's per se theory of negligence based on section 5 of the FTC Act and the GLBA does not save her claim for two reasons.

*First*, several courts have held that alleged violations of statutes that do not provide a private right of action—like section 5 of the FTC Act and the GLBA—cannot support a claim for negligence per se. *See, e.g.*, *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-J-32MCR, 2020 WL 691848, at \*9 (M.D. Fla. Jan. 27, 2020) ("[V]iolation of the FTC Act cannot be the basis for

---

[9] Plaintiff's counsel made the same allegations in another complaint related to the Accellion breach. *See* Second Consolidated Class Action Compl. ¶¶ 40-41, *Angus v. Flagstar Bank, FSB*, No. 2:21-cv-10657, Dkt. No. 38 (E.D. Mich. Aug. 12, 2021) (alleging "Defendant should have migrated to Kiteworks or another superior solution before the Data Breach occurred" and "Defendant continued to use Accellion FTA to share and/or store the PII of Class Members, notwithstanding its 'legacy' status and the availability of a 'superior' alternative").

a negligence per se claim."); *In re: Netgain Tech., LLC*, No. 21-cv-1210 (SRN/LIB), 2022 WL 1810606, at *16 (D. Minn. June 2, 2022) (dismissing negligence per se claim because "the FTC Act grants the FTC enforcement authority and establishes a certain standard of care, not a private right of action").

*Second*, Plaintiff has not adequately alleged that Popular violated section 5 of the FTC Act or the GLBA. As discussed above, Plaintiff's conclusory allegations that Popular "fail[ed] to use reasonable measures to protect PII and [did] not comply[] with applicable industry standards," Compl. ¶ 121, are insufficient to state a claim. Plaintiff's allegation that Popular "fail[ed] to provide annual privacy notices to customers after the customer relationship ended," *id.* ¶ 124, fares no better. Plaintiff has not alleged that her customer relationship with Popular has ended or that Popular failed to provide her with an annual privacy notice. But even if Plaintiff had made such allegations, they would be insufficient to state a claim because failure to receive a privacy notice did not cause Plaintiff's purported injuries.

Plaintiff next alleges that Popular failed to inform its customers that it was storing and/or sharing customers' PII on the Accellion FTA and failed to send opt-out notices and afford a reasonable opportunity to opt out of such sharing. Compl. ¶ 124(b), (e). The GLBA, however, does not require or otherwise impose a duty on a bank to send opt-out notices or afford its customers an opportunity to opt out of sharing where, as here, the bank shares personal information with its service providers for the purpose of processing and servicing transactions, 12 C.F.R. § 1016.14, or "[t]o protect the confidentiality or security of [the bank's] records pertaining to the consumer, service, product or transaction," *id.* § 1016.15(2)(i). Indeed, such sharing is exempt from the opt out requirements. *Id.* §§ 1016.14, 1016.15.

Finally, Plaintiff's allegations that Popular "failed to adequately (i) oversee its . . . Accellion FTA and (ii) require Accellion by contract to protect the security and confidentiality of customer information," Compl. ¶ 124(d), make little sense given that it was Popular's vendor that contracted with Accellion, not Popular.

4. **Plaintiff has not alleged a sufficient causal nexus between any negligent act by Popular and her alleged injury.**

Plaintiff also fails to allege a sufficient casual nexus between her purported injuries and Popular's alleged breach (i.e., proximate cause). In order to plead proximate cause, a plaintiff must adequately allege that the injury was reasonably foreseeable and could have been avoided if the defendant had not breached its duty of care. *See Baum-Holland v. El Conquistador P'ship, L.P.*, 336 F. Supp. 3d 6, 22 (D.P.R. 2018), *aff'd sub nom, Baum-Holland v. Hilton El Con Mgmt., LLC*, 964 F. 3d 77 (1st Cir. 2020); *Woods-Leber v. Hyatt Hotels of P.R., Inc.*, 951 F. Supp. 1028, 1038 (D.P.R. 1996) ("[T]he plaintiff must show that his or her injury was reasonably foreseeable, and the main way to demonstrate foreseeability is to point to similar incidents in the past that the defendant knew or should have known about."), *aff'd*, 124 F.3d 47 (1st Cir. 1997). As discussed in Section I.B, to the extent Plaintiff has alleged any cognizable injury, that injury was caused by the Accellion Breach, not by any negligent act or omission by Popular.

B. **Plaintiff Fails to State a Claim for Breach of Implied Contract (Count II).**

In order to state a claim for breach of contract under Puerto Rico law, a plaintiff must plead (1) the existence of a valid contract, (2) material breach, and (3) damages. *See Mega Media Holding*, 852 F. Supp. 2d at 199. The existence of a valid contract requires (1) that the contracting parties' consent—i.e., there is a meeting of the minds where the parties agreed to be bound by the contract, (2) a definitive, legal object of the contract, and (3) consideration. *See id.*

at 200 (citing 31 L.P.R.A. § 3391); *Rivera v. Marriott Int'l, Inc.*, 456 F. Supp. 3d 330, 340 (D.P.R. 2020). Plaintiff fails to plead these elements.

*First*, Popular has found "no authority establishing that contracts 'implied in fact' are valid and binding under Puerto Rico law." *Marrero-Garcie v. Irizarry*, 33 F.3d 117, 121 n.3 (1st Cir. 1994). Plaintiff, therefore, cannot plead the first element of a breach of contract claim.

*Second*, even if implied contracts are recognized under Puerto Rico law, Plaintiff fails to allege mutual consent or a meeting of the minds to show the existence of a valid implied contract. Instead, Plaintiff alleges in conclusory fashion that *thirty years* ago—long before data breaches were regular occurrences—she provided her PII to Popular, Compl. ¶ 71, and Popular "agreed to protect and safeguard [her] PII . . . from being disclosed or accessed by unauthorized third parties." *Id.* ¶ 135. Plaintiff does not, however, point to any objective facts showing that Popular *consented*, without limitation, to safeguard her PII from unauthorized access. Courts have found similar allegations to be insufficient to state a claim for breach of implied contract. *See In re SuperValu Inc.*, 870 F.3d at 771 n.6 (concluding that plaintiffs did not become parties to an implied contract to protect PII simply by giving defendant their payment information); *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, No. 15-cv-1125-MJR, 2017 WL 1551330, at *5 (S.D. Ill. May 1, 2017) (dismissing plaintiffs' breach of implied contract claim because allegations of an "implicit promise" are insufficient to establish an implied relationship), *aff'd* 887 F.3d 803 (7th Cir. 2018).

Plaintiff's citation to Popular's online privacy policy—which states that Popular uses security measures that comply with federal law to protect personal information from unauthorized access and use, Compl ¶ 3—does not save Plaintiff's claim. Not only does Plaintiff fail to allege that she read or relied upon the privacy policy, but "broad statements of company

policy do not generally give rise to contract claims." *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196, 1200 (D. N.D. 2004).[10]

*Third*, even if Plaintiff alleged a valid, implied contract—which she has not—her conclusory allegation that Popular breached that contract "by failing to safeguard and protect [her] personal and financial information," Compl. ¶ 140, does not give rise to a breach of implied contract. *See Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717-18 (8th Cir. 2017) ("The implied premise that because data was hacked [a defendant's] protections must have been inadequate is a 'naked assertion[] devoid of further factual enhancement' that cannot survive a motion to dismiss." (quoting *Iqbal*, 556 U.S. at 678)); *Gardner v. Health Net, Inc.*, No. CV 10-2140 PA (CWx), 2010 WL 11597979, at *6 (C.D. Cal. Aug. 12, 2010) (reasoning that even if there was an implied contract between parties, the plaintiffs did not sufficient allege that the defendant breached the contract by "fail[ing] to safeguard" their PII).

*Finally*, as discussed in Sections II.A.1 and II.A.4, Plaintiff has not alleged any damages resulting from any alleged breach by Popular.

### C.    Plaintiff Fails to State a Claim for Invasion of Privacy (Count III).

To establish an invasion of privacy claim under Puerto Rico law, Plaintiff must show either an unreasonable intrusion or public disclosure of private facts. *See Dopp v. Fairfax Consultants, Ltd.*, 771 F. Supp. 494, 496 (D.P.R. 1990).[11] The application of the right to privacy

---

[10] *See also In re Zappos.com, Inc. Customer Data Sec. Breach Litig.,* No. 3:12-cv-325-RCJ-VPC, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013) (dismissing contract claims and noting that "unilateral statements of fact alleged as to the safety of customers' data" on the defendant's website "do not create any contractual obligations"); *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (affirming dismissal of breach of implied contract claim in data breach action where plaintiffs did "not allege that they read or even saw the documents" that they claimed formed an implied contract "or that they understood them as an offer").

[11] There are two other forms of invasion of privacy—appropriation and false light in the public eye—neither of which are applicable to the facts here. *See id.*

to the particular set of facts is left to the "prudent discretion" of the trial courts. *Id.* (citing *Colón v. Romero Barceló*, 112 D.P.R. 573, 579 (1982)). Here, Plaintiff fails to allege sufficient facts to support a claim of either unreasonable intrusion or public disclosure of private facts.

### 1.    Unreasonable intrusion

To state a claim for invasion of privacy based on an unreasonable intrusion, the act must be intrusive. *Dopp*, 771 F. Supp at 497. In *Dopp*, the court concluded that plaintiff had not pled an invasion of privacy claim based on unreasonable intrusion because plaintiff was not aware a private investigator was following him and the investigation was conducted in the least intrusive way possible. *Id.* Here, Plaintiff's invasion of privacy claim based on unreasonable intrusion fails for two reasons.

*First*, Plaintiff has not alleged any intrusive act on the part of Popular. Instead, Plaintiff alleges that Popular "failed to protect" her PII. Compl. ¶ 146. But courts routinely dismiss invasion of privacy claims in data breach cases based on similar allegations because the alleged invasion of privacy was not an *intentional* intrusion by the defendant. *See, e.g.*, *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428, at *12 (S.D. Cal. Nov. 3, 2016) ("Plaintiff fails . . . to allege any facts that would suggest that the data breach was an intentional violation of Plaintiff's and other class members' privacy, as opposed to merely a negligent one."); *Elliott-Lewis v. Abbott Labs.*, 378 F. Supp. 3d 67, 71 (D. Mass. 2019) (dismissing plaintiff's invasion of privacy claim where she did not allege any facts to suggest that the defendant released her personal data intentionally); *Allgood v. PaperlessPay Corp.*, No. 3:20-cv-516-MMH-MCR, 2022 WL 846070, at *12 (M.D. Fl. Mar. 22, 2022) (dismissing plaintiffs' invasion of privacy claim because they did not plead any facts to suggest that the defendant intentionally shared their information or intentionally caused the data breach).

*Second*, like the plaintiff in *Dopp*, Plaintiff was not even aware of the Accellion Breach—the alleged intrusion—until she was notified of it months later. She therefore cannot show that the act was intrusive.

2.    **Public Disclosure**

To state a claim for invasion of privacy based on public disclosure of private facts, the facts disclosed must be private and the public disclosure must be "excessive." *Lopez-Pacheco v. United States*, 627 F. Supp. 1224, 1229 (D.P.R. 1986), *aff'd*, 815 F.2d 692 (1st Cir. 1987); *see also Dopp*, 771 F. Supp. at 497 (concluding that "publication to only one person cannot be considered anything more than 'de minimus'"). Plaintiff's invasion of privacy claim based on public disclosure of private facts again fails for two reasons.

*First*, Plaintiff has not alleged any public disclosure, let alone *excessive* public disclosure. Instead, Plaintiff alleges that Popular disclosed her PII to a vendor, as it is allowed to do under federal law, *see* Section II.A.2, and that vendor used a secure file share platform that was breached by an unauthorized third party. This is neither a public disclosure nor an excessive disclosure.

*Second*, this claim fails for the same reason as the claim based on unreasonable intrusion—Plaintiff has not alleged that the disclosure was intentional. *See Dugas*, 2016 WL 6523428, at *12; *Elliott-Lewis*, 378 F. Supp. 3d at 71; *Allgood*, 2022 WL 846070, at *12.

**D.**    **Plaintiff Fails to State a Claim for Breach of Confidence (Count IV).**

Puerto Rico does not recognize a separate tort for breach of confidence. Rather, such claims fall under the same general tort statute as negligence claims, P.R. Laws Ann. tit. 31, § 10801. Plaintiff's breach of confidence claim therefore fails for the same reasons as her negligence claim. *See* Section II.A.

23

But even if Puerto Rico were to recognize a separate tort for breach of confidence, Plaintiff has not alleged the required elements, namely: "the unconsented, unprivileged *disclosure* to a third party of nonpublic information that the defendant has learned within a confidential relationship." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 932 (11th Cir. 2020) (citations omitted) (emphasis added); *see also Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 114 (3d Cir. 2019) (citations omitted). The disclosure must be intentional—mere negligence is insufficient to state a claim for breach of confidence. *See, e.g.*, *In re Brinker*, 2020 WL 691848, at *22 (dismissing breach of confidence claim where the plaintiff "did not do any act that made Plaintiffs' information known—the information was stolen by third-parties"). Here, Plaintiff does not and cannot allege that Popular intentionally disclosed Plaintiff's information to the public or an unauthorized third party.

**E.      Plaintiff Fails to State a Claim for Unjust Enrichment (Count V).**

To plead a claim for unjust enrichment under Puerto Rico law, Plaintiff must allege (1) an occurrence of an enrichment, (2) a correlative loss, (3) a connection between the loss and the enrichment, (4) the absence of cause to justify the enrichment, and (5) the lack of legal provision which precludes application of an enrichment without cause. *Ortiz Andular v. ELA*, 122 D.P.R. 817, 823 (En El Tribunal Supremo De Puerto Rico 1988). Plaintiff fails to allege these elements.

*First*, it is well settled under Puerto Rico law that claims for unjust enrichment are "subsidiary" in nature and not applicable where, as here, a plaintiff "may seek other forms of relief." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, --- F. Supp. 3d ---, No. 17-BK-3283 (LTS), 2021 WL 7162427, at *17 (D.P.R. Dec. 27, 2021). "When plaintiffs allege conduct that is covered by an applicable statute, even if plaintiffs have failed to sufficiently allege that claim . . . , it is inappropriate to allow a claim for unjust enrichment." *Id*. Here, Plaintiff is pursuing other claims against Popular, and while these other claims—like the unjust enrichment

claim—are inadequately pled, it is nevertheless inappropriate to allow her claim for unjust enrichment to proceed.[12]

*Second*, Plaintiff fails to allege any enrichment conferred on Popular other than a conclusory assertion that Popular benefitted monetarily in the form of "monies or fees paid for services." Compl. ¶ 171. Plaintiff does not allege that she personally paid any fees to Popular and, if she did, the amount of those fees and what services Popular provided in exchange.

*Third*, as discussed above, Plaintiff has not adequately pled a correlative loss, let alone a connection between the loss and enrichment. *See Ortiz Andujar*, 122 D.P.R. at 828-29 ("[T]he gain and the loss [must] arise from the same fact or circumstance."). There is no connection between the fees allegedly paid to Popular and Plaintiff's purported injuries.

*Finally*, Plaintiff fails to allege that Popular's retention of the purported benefit would be unjust. *See id.* at 829-30. To the extent that Plaintiff paid any fees to Popular, she received, in exchange, financial services from Popular in the form of "checking and saving[s] accounts." Compl. ¶ 71. *See In re Zappos.com*, 2013 WL 4830497, at *5 ("[I]t appears undisputed that Defendant provided Plaintiffs a benefit in return (providing the goods) such that there is no unrecompensed benefit conferred."); *In re SuperValu, Inc.*, 925 F.3d 955, 966 (8th Cir. 2019) ("[Plaintiff] paid for groceries . . . . He did not pay a premium for a side order of data security and protection." (internal quotations omitted)).

\*       \*       \*       \*       \*

**WHEREFORE,** Popular respectfully requests that the Court grant the instant motion to dismiss and dismiss the Complaint in its entirety.

---

[12] Plaintiff, moreover, may seek relief as a putative member of the settlement class in the Accellion litigation. *See* n.1.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 1st day of August 2022.

**IT IS HEREBY CERTIFIED** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**PIETRANTONI MÉNDEZ & ÁLVAREZ LLC**
Popular Center, 19th Floor
208 Ponce de León Avenue
San Juan, P.R. 00918
Telephone: (787) 274-1212
Facsimile: (787) 274-1470

*s/ Diego Murgia Díaz*
Diego Murgia Díaz
USDC-PR Bar No. 225704
dmurgia@pmalaw.com

William Ridgway (*pro hac vice* pending)
Lindsey Sieling (*pro hac vice* pending)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
155 North Wacker Drive, Suite 2700
Chicago, IL 60525
Telephone: (312) 407-0700
Facsimile: (312) 407-0411
william.ridgway@skadden.com
lindsey.sieling@skadden.com

Meredith C. Slawe* (*pro hac vice* pending)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
meredith.slawe@skadden.com

*Admitted to Practice in Pennsylvania and New Jersey;
Not Admitted in New York

*Attorneys for Defendant Banco Popular de Puerto Rico*
